**[J-67-2016] [OAJC: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| POCONO MOUNTAIN SCHOOL DISTRICT, | : | No. 87 MAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| Appellant | : | Commonwealth Court dated July 8, |
| | : | 2015, at No. 2052 CD 2014 Affirming |
| | : | the Order of the Pennsylvania |
| v. | : | Department of Education dated October |
| | : | 23, 2014 at No. EDU-2014-SLAP- |
| | : | 000176. |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, DIVISION OF SUBSIDY | : | ARGUED: May 11, 2016 |
| DATA AND ADMINISTRATION, | : | |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: December 27, 2016**

I join Justice Baer's dissent and write to express some additional observations. In my view, Section 8327(b)(2) of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. §8327(b)(2), need not be read *in pari materia* with Section 1729-A(i) of the Charter School Law (CSL), 24 P.S. §17-1729-A(i), because the statutes address different subjects: one provides a payment mechanism for PSERS contributions, Section 8327(b)(2), and one describes the protocols for closure of charter schools, Section 1729-A(i). I recognize that both provisions address charter schools. However, Section 8327(b)(2) was added to a narrowly focused pension provision in order to provide that charter schools — as employers required by Section 8327(a) to make quarterly contributions to the PSERS Fund — are also subject to the payment

mechanism applicable to other PSERS Fund employers found in Section 8327(b)(1).[1] Additionally, I would conclude the mandates of the Retirement Code are not subsumed by the CSL. Section 1724-A(c) of the CSL requires all charter school employees to be members of PSERS and the language of Section 1724-A(c) further demonstrates the provisions of the Retirement Code take precedence over the CSL with regard to pensions. *See* 24 P.S. §17-1724-A(c) ("All employes of a charter school shall be enrolled in [PSERS] in the same manner as set forth in 24 Pa.C.S. §8301(a) (relating to mandatory and optional membership)….The charter school shall be considered a public school as defined in 24 Pa.C.S. §8102 (relating to definitions) and shall make quarterly payments by employers to [PSERS]….").

Moreover, pursuant to Section 8531 of the Retirement Code, 24 Pa.C.S. §8531, the Commonwealth is the ultimate guarantor of PSERS contributions.[2] I read Section

---

[1] Section 8327(b)(1), 24 Pa.C.S. §8327(b)(1), provides:

> To facilitate the payment of amounts due from any employer to the fund through the State Treasurer and to permit the exchange of credits between the State Treasurer and any employer, the Secretary of Education and the State Treasurer shall cause to be deducted and paid into the fund from the amount of any moneys due to any employer on account of any appropriation for schools or other purposes amounts equal to the employer and pickup contributions which an employer is required to pay to the fund, as certified by the board, and as remains unpaid on the date such appropriations would otherwise be paid to the employer. Such amount shall be credited to the appropriate accounts in the fund.

[2] Section 8531, 24 Pa.C.S. §8531, provides:

> Statutory interest charges payable, the maintenance of reserves in the fund, and the payment of all annuities and other benefits granted by the board under the provisions of this part are hereby made obligations of the Commonwealth. All income, interest, and dividends derived from deposits and investments authorized by this part shall be used for the payment of the said obligations of the Commonwealth.

8327 as a payment mechanism intended to facilitate the Commonwealth's obligation as guarantor. Further, the funds subject to payment to PSERS under Section 8327(b) are **Commonwealth** funds, not money from the general fund of a school district. *See* 24 Pa.C.S. §8327(b)(2) (Secretary of Education and State Treasurer shall deduct "from any **funds appropriated to the Department of Education** for basic education of the chartering school district of a charter school" amount equal to employer and pick-up contributions to PSERS Fund, which charter school has failed to contribute) (emphasis added). By enacting Section 8327(b)(2), the General Assembly authorized the redirection of Commonwealth appropriations to the PSERS Fund in the event of a charter school's failure to make statutorily mandated PSERS contributions, thus ensuring the balances in PSERS Fund are not diminished. I recognize the last sentence of Section 1729-A(i) states that, in the event of the closure of a charter school, neither school entities with children enrolled in the charter school nor the Commonwealth shall be liable for outstanding liabilities or obligations of the charter school. However, in my view, the General Assembly never contemplated that delinquent PSERS contributions would be Section 1729-A(i) liabilities because the Commonwealth has already accepted responsibility for delinquent PSERS contributions as the ultimate guarantor pursuant to Section 8531 of the Retirement Code. The Commonwealth is the guarantor of PSERS contributions and Section 8327 is the Commonwealth's funding mechanism to transfer Commonwealth monies to the PSERS Fund when any PSERS contributing employer has become delinquent.[3]

---

[3] I further note charter school PSERS contributions are mandated by Section 8237(a) of the Retirement Code and Section 1724-A(c) of the CSL and, therefore, are not indebtedness arising from the exercise of the powers described in Section 1714-A(a). *See* 24 P.S. §17-1714-A(a) (authorizing charter schools to acquire real property by purchase or lease, make contracts and leases for procurement of services, equipment and supplies, and incur debt for construction of school facilities). Accordingly, Section (continued…)

The statutory scheme of the CSL makes clear the school board of a chartering school district must assess annually whether a charter school is meeting its goals and conduct a comprehensive review prior to granting a five-year renewal. *See* 24 P.S. §17-1728-A(a) ("The local board of school directors shall annually assess whether each charter school is meeting the goals of its charter and shall conduct a comprehensive review prior to granting a five (5) year renewal of the charter…."). To facilitate these assessments, the school board has ongoing access to a charter school's records in order to ensure a charter school is in compliance with its charter and the CSL. *See id.* ("The local board of school directors shall have ongoing access to the records and facilities of the charter school to ensure that the charter school is in compliance with its charter and this act…."). Section 1728-A(a) places upon the chartering school district an obligation to monitor a charter school and, therefore, the school district should be aware of financial deficiencies, particularly in circumstances where the school district engages in an ongoing battle to revoke a charter as occurred here.[4] As evidenced by

---

(…continued)
1714-A(c), which prohibits the imposition of such charter school debt upon a school entity (such as a school district) or the Commonwealth, does not bar the redirection of funds for PSERS contributions pursuant to Section 8327(b)(2).

[4]  The Pocono Mountain School District engaged for six years in extensive efforts to revoke the charter of the Pocono Mountain Charter School. In 2006, the School District renewed the charter for five years subject to sixty-five conditions. *Pocono Mt. Charter Sch., Inc. v. Pocono Mt. Sch. Dist.*, 88 A.3d 275, 279 (Pa. Cmwlth. 2014). In May 2008, the School District adopted a resolution containing twenty-seven reasons, including alleged financial mismanagement and improprieties, to revoke the charter. *Id.* In October 2010, after holding more than sixteen public hearings, the Pocono Mountain School District School Board voted to revoke the charter because, *inter alia*, the Charter School failed to meet generally accepted standards of fiscal management as required by Section 1729-A(a)(3) of the CSL, 24 P.S. §17-1729-A(a)(3). *Id.* at 282. After a series of appeals to the State Charter School Appeal Board and the Commonwealth Court, the appointment of a court-monitored custodian by the Court of Common Pleas of Monroe County, and the release of a scathing audit report by the Auditor General, the Charter School finally ceased operations in June 2014. *See generally Pocono Mt.*
(continued…)

the School District's revocation resolution, it was keenly aware of the Charter School's alleged financial mismanagement and failure to comply with the mandates of the CSL. The School District had the ability to determine whether the Charter School was current on its PSERS contributions, but seemingly failed in its supervisory duties under the CSL. In my view, a chartering school district's responsibilities do not end upon issuance of a charter. The CSL empowers and thus requires a chartering school district to be diligent in fulfilling its obligations in order to protect the quality and integrity of the public education funded by the Commonwealth and its taxpayers. The result of the School District's failure to do so here is further harm to teachers who not only lost their jobs with the closure of their school, but may now be denied credit for time worked, because the School District has successfully argued before this Court that the Department of Education is unable to redirect Commonwealth appropriations as authorized by Section 8327.

---

(…continued)
*Charter Sch.* (providing comprehensive factual background); *Pocono Mt. Sch. Dist. v. Pa. Dep't of Educ.*, 2052 C.D. 2014, 2015 Pa. Commw. Unpub. LEXIS 477 (Pa. Cmwlth. July 8, 2015) (noting June 21, 2014, was charter revocation effective date).